IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY ALDUGOM, <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | No. 24-cv-05378 <br> Judge Franklin U. Valderrama |

**ORDER**

Plaintiff Mary Aldugom (Aldugom) filed this action against Defendant Apple Inc. (Apple) after an associate at an Apple Genuis Bar[1] allegedly deleted files stored on her laptop, despite her instructions to the associate not to access or alter certain files. R. 1, Not. Removal, Ex. A, Compl.[2] Aldugom, even with the assistance of Apple technicians, was never able to recover the lost data. Compl. ¶ 17. Consequently, Aldugom, proceeding *pro se*, sued Apple in the Circuit Court of Cook County, asserting claims for negligence (Count I) and negligent infliction of emotional distress (Count II). Apple, pursuant to 28 U.S.C. §§ 1332 (a), 1441(a), removed the case to this Court on the basis of diversity jurisdiction, as the amount in controversy exceeds $75,000, Aldugom is a citizen of Illinois, and Apple is a citizen of California. *See generally* Not. Removal.

Before the Court is Apple's motion to dismiss under Fed. R. Civ. P. 12(b)(6). R. 7, Mot. Dismiss. Upon receiving the motion, the Court set a briefing schedule directing Aldugom to file a response by July 29, 2024, and Apple to reply by August 12, 2024. *See* R. 8.

Aldugom did not file a response, failing to comply with the Court's scheduling order. *Id*. Nor did she seek leave to file a tardy response. No matter, however, as "Rule 12(b)(6) prevents courts from granting unopposed motions solely because there is no response," *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021), and the burden remains on Apple "to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*,

---

[1]The alleged incident took place on September 22, 2021, at the Apple Store Genuis Bar located at 801 W. North Ave. Chicago, Il.

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

968 F.3d 802, 806 (7th Cir. 2020). Put another way, this Court's obligation to determine the sufficiency of Aldugom's Complaint remains, despite her failure to respond. *Id*. And for the reasons that follow, the Court grants Apple's motion to dismiss.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. The Court accepts all well-pleaded factual allegations in the Complaint as true. *Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087 (7th Cir. 2016).

Apple, in pertinent part, urges the Court to dismiss Aldugom's Complaint because her claims are barred by the economic loss doctrine (also known as the *Moorman* Doctrine in Illinois, *see Moorman Mfg. v. Nat'l Tank Co.*, 435 N.E. 2d 443 (Ill. 1982)). The Court agrees.

The *Moorman* Doctrine generally prohibits "su[ing] in tort to recover for solely economic losses without any personal injury or property damage." *Lewis v. Lead Indus. Ass'n*. 178 N.E.3d 1046, 10540 (Ill. 2020); *see also Mutual Service Cas. Ins. Co. v. Elizabeth State Bank,* 265 F.3d 601, 615, 618 (7th Cir. 2001) (noting that "*Moorman* held that recovery for a loss that is solely economic in nature must be had in contract rather than tort"). The doctrine also precludes "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits without any claim of personal injury or damage to other property." *ExxonMobil Oil Corp. v. Amex Const. Co., Inc.*, 702 F. Supp. 2d 942, 967 (N.D. Ill. 2010).

This doctrine, as the *Moorman* court articulated, is grounded in the principle that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence…. The remedy for economic loss, loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause, on the other hand, lies in contract." *Moorman,* 435 N.E.2d at 450.

The *Moorman* Doctrine applies, as the Seventh Circuit emphasized, whether or not the alleged damage stems from a contractual relationship. *Rardin v. T & D Mach. Handling, Inc.*, 890 F.2d 24, 28 (7th Cir. 1989) ("… although there is no contract, the policies that animate the principle which denies recovery of consequential damages in contract cases apply fully and forbid a tort end-run around that principle.").

There are, however, three exceptions to the doctrine: "(1) where the plaintiff sustained damage, *i.e.* personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litigation,* 680 N.E.2d 265, 275 (1997). However, none are applicable here, as Aldugom does not allege false or negligent representation by Apple, nor does she allege that her alleged property damage resulted from a sudden or dangerous occurrence. *See generally* Compl.

Against this backdrop, Aldugom's Complaint fails to allege the type of damages required to support tort claims under Illinois law. At bottom, her allegations, while unfortunate, are tantamount to "disappointed expectations" stemming from a "commercial undertaking." *Moorman,* 435 N.E.2d at 450.

Specifically, Aldugom's lawsuit arises from a September 2021 visit to the Apple Store Genius Bar, during which she sought advice regarding either upgrading her laptop's storage or purchasing a new one with greater capacity. Compl. ¶ 6. During this consultation, Aldugom permitted a Genius Bar associate to inspect her laptop after the associate noted a potential functionality defect. *Id.* ¶ 8.

However, according to Aldugom, this permission was expressly limited. She claims she instructed the associate not to "alter in any way" or otherwise access certain files on her laptop, including one labeled "graduate work." *Id.* ¶ 8. Despite these instructions, Aldugom alleges that after more than an hour of waiting while the associate worked on her laptop, she accessed her iCloud account via her phone and discovered that her graduate work and other personal files were no longer stored on her laptop. *Id.* ¶¶ 9, 10, 11, 15.

After several failed attempts by Aldugom and Apple employees to recover the files, Aldugom sued Apple, claiming that (1) the lost files constitute "destroyed" property; (2) she spent several months trying to replicate the lost work product; and (3) her inability to recreate certain work product had an adverse impact on her graduate studies and future employment opportunities. Aldugom further claims that

3

she experienced prolonged periods of stress and mental anguish on account of the lost files. Compl. ¶¶ 18-20.

Critically, Aldugom does not allege that her purported challenges stemmed from any property damage beyond the lost data. *See generally* Compl. As Apple correctly argues, however, lost data alone is not sufficient damage to sustain her negligence claims. *See generally* Compl.; Mot. Dismiss at 5–6 (citing, *inter alia*, *Rardin v. T & D Mach. Handling, Inc.*, 890 F.2d 24, 26 (7th Cir. 1989)). *Rardin* is instructive.

In *Rardin*, the Seventh Circuit examined whether consequential damages could be recovered from a tortfeasor not in privity with the plaintiff through a hypothetical scenario involving a watch-repair-gone-wrong:

> *A* takes his watch to a retail store, *B*, for repair. *B* sends it out to a watchmaker, *C*. Through negligence, *C* damages the watch, and when it is returned to A via B it does not tell time accurately. As a result, *A* misses an important meeting with his creditors. They petition him into bankruptcy. He loses everything. Can he obtain damages from *C*, the watchmaker, for the consequences of C's negligence?

*Rardin*, 890 F.2d at 26 (emphasis added).

The *Rardin* court concluded that the plaintiff in this scenario could not sue for the consequences of the watch repairer's negligence or the "property damage" itself. *Id*. The court's decision was rooted in two principles: (1) "it would be unreasonable to impose liability unless the potential injurer had (or should have had) a rough idea of the extent of liability in the event of a "careless accident," *Id*.; *see also Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 890 (N.D. Ill. 1999), and (2) the *Moorman* Doctrine precludes the recovery of damages in tort for "purely economic loss." *Rardin,* 890 F.2d at 27–8.

Further exploring the contours of the *Moorman* Doctrine (or the "for-want-of-a-nail-the-kingdom-was-lost" liability limit, as described by the Seventh Circuit), the *Rardin* court drew parallels with the economic loss principles articulated in *Barber Lines A/S v. M/V Donau Maru,* 764 F.2d 50 (1st Cir. 1985), which held that economic loss is unrecoverable "even if for example a negligent accident in the Holland Tunnel backs up traffic for hours, imposing cumulatively enormous and readily monetizable costs of delay." *Id*.

In short, *Rardin* "did not turn on whether it was a claim in a contract or tort." *Id*. The central issues were (1) whether the tortfeasor had notice of the special circumstances giving rise to consequential damages; and (2) whether the alleged damages constituted purely economic loss. *Id*.; *see also Evra Corp. v. Swiss Bank Corp.,* 673 F.2d 951 (7th Cir. 1982) (holding that he failure of a Swiss bank to properly

handle a wire transfer requested by plaintiff's U.S. bank, with result that plaintiff lost the benefit of an advantageous ship charter, did not render the Swiss Bank liable in tort for the consequential damages); *Woodard v. Am. Fam. Mut. Ins. Co.*, 950 F. Supp. 1382, 1391 (N.D. Ill. 1997).

Applying this reasoning, Aldugom alleges that Apple, rather than repairing her laptop, negligently damaged it by deleting her data, purportedly causing her economic losses. *See generally* Compl. She further alleges that she generally instructed the associate to avoid certain files. Compl. ¶ 8. However, this falls short of claiming the Genuis associate was aware of any special circumstances that might have led to her purported damages, or that the associate was "in a position to assess the consequences of its negligence." *Woodard,* 950 F. Supp. at 1391. For example, Aldugom failed to allege that she informed the associate that her "graduate work" files were not backed up or otherwise stored on another system or device. Nor did she allege that she informed the associate that certain files on her laptop were essential to completing her graduate studies. *See generally* Compl.

Given the absence of allegations that the associate was explicitly informed of the importance or irreplaceability of Aldugom's files, her claims fail to establish that the Genius associate had sufficient knowledge to anticipate the economic impact of the alleged data deletion. The principle articulated in *Woodard* emphasizes that liability for negligence may require the defendant to have been "in a position to assess the consequences of its negligence." Without any indication that the associate was provided with context about the files' significance, the purported damages stemming from their deletion could not have been reasonably foreseen by the associate. *Woodard,* 950 F. Supp. at 1391.

As for her claim for damages, as noted previously, Aldugom does not allege physical injury, and her purported symptoms of emotional distress do not qualify as such under Illinois law. *See Benton v. Little League Baseball, Inc.*, 181 N.E.3d 902, 932 (Ill. App. Ct. 2020). Instead, Aldugom seeks damages for the time she spent recreating the allegedly lost data, arguing this was detrimental to her graduate work and resulted in lost future employment opportunities and earnings. Compl. ¶¶ 18-20, 30. However, under the *Moorman* Doctrine, such economic loss is not recoverable in tort. *See Moorman,* 435 N.E.2d at 449 (defining economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property," as well as "as well as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold").

Moreover, as the Court noted previously, lost data from a laptop, resulting from Apple's efforts to increase storage capacity, represented the type of damage one might reasonably expect as direct consequence of, or incidental to" such services, and thus

5

not sufficient to sustain Aldugom's negligence claims. *See Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 924 N.E.2d 1231, 1243-44 (Ill. App. Ct. Dist. 2010).

Ultimately, because Aldugom's Complaint neither alleges that Apple had any special notice of the potential consequences stemming from its negligence nor advances any exception to application of the *Moorman* Doctrine, her claim for consequential economic losses is barred. *Rardin*, 890 F.2d at 28 ("Once a case is held to fall within the [*Moorman* Doctrine], the plaintiff has no tort remedy.").

For the foregoing reason, the Court grants Defendant's motion to dismiss and dismisses Aldugom's Complaint. The dismissal, however, is without prejudice as the Court cannot say, at this stage, that there is no set of facts under which Aldugom could plausibly state a claim. Therefore, Aldugom has leave to file an amended complaint by April 21, 2025. Failure to do so will result in dismissal of this action with prejudice.

Date: 3/31/2025

United States District Judge
Franklin U. Valderrama